UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| CAROL L. BARSKY, M.D., | ) |
| Plaintiff, | ) |
| v. | )    Case No. 1:26-cv-259 |
| DARTMOUTH-HITCHCOCK MEDICAL CENTER, DARTMOUTH-HITCHCOCK CLINIC, MARY HITCHCOCK MEMORIAL HOSPITAL, AND DARTMOUTH-HITCHCOCK HEALTH, | )    **ANSWER AND AFFIRMATIVE DEFENSES** <br><br> **JURY TRIAL DEMANDED** |
| Defendant. | ) |

## ANSWER

Defendants Dartmouth-Hitchcock Medical Center, Dartmouth-Hitchcock Clinic, Mary Hitchcock Memorial Hospital, and Dartmouth-Hitchcock Health ("Dartmouth Health"), by and through their attorneys, hereby answer the Complaint filed by Plaintiff Carol L. Barsky, M.D. ("Barsky" or "Plaintiff") as follows.

No response is required to the preamble, headings, unnumbered introductory paragraphs, footnotes, or prayers for relief contained in Plaintiff's Complaint. To the extent that any response is required, the allegations in the preamble, headings, unnumbered introductory paragraphs, footnotes, and prayers for relief are denied.

Except as admitted explicitly in this Answer, all allegations of the Complaint are denied.

### Parties, Jurisdiction, and Venue

1.      Dartmouth Health admits that Dr. Barsky is the former Chief Quality and Value Officer for Dartmouth Health. Dartmouth Health is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 1, and therefore denies

1

the same.

2.      Dartmouth Health admits the allegations in Paragraph 2.

3.      Dartmouth Health admits the allegations in Paragraph 3.

4.      Dartmouth Health admits that Dartmouth-Hitchcock Clinic serves as the employing entity for some professional staff at Dartmouth Health, including Dr. Barsky. Answering further, some Dartmouth Health member hospitals and Home Care agencies employ independent providers.

5.      Dartmouth Health denies the allegations in Paragraph 5. Answering further, the flagship hospital is Mary Hitchcock Memorial Hospital, which, together with the Lebanon Division of Dartmouth-Hitchcock Clinic, composes Dartmouth-Hitchcock Medical Center, New Hampshire's only Academic Medical Center.

**Dr. Barsky's Career and Role at Dartmouth**

6.      Dartmouth Health admits only that Dr. Barsky is a physician with recognized expertise in quality and safety in the healthcare industry.  Dartmouth Health is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 6, and therefore denies the same.

7.      Dartmouth Health admits the allegations in Paragraph 7.

8.      Dartmouth Health admits the allegations in Paragraph 8.

9.      Paragraph 9 purports to characterize a letter agreement dated January 26, 2021. The document speaks for itself, and Dartmouth Health denies any allegation inconsistent with the same.

10.     Paragraph 10 purports to quote from the letter agreement dated January 26, 2021. The document speaks for itself, and Dartmouth Health denies any allegation inconsistent with the same.

11.    Paragraph 11 purports to quote the letter agreement dated January 26, 2021. The document speaks for itself, and Dartmouth Health denies any allegation inconsistent with the same.

12.    Dartmouth Health admits the allegations in Paragraph 12. Answering further, while she initially reported to the Chief Clinical Officer, Dr. Barsky was re-assigned to report to the Chief Operating Officer. At some point in early 2025, Dr. Barsky's direct reporting relationship changed to Dr. Conroy.

13.    Dartmouth Health admits the allegations in Paragraph 13.

14.    Dartmouth Health admits that Dr. Barsky started during the COVID pandemic. Dartmouth Health is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 14, and therefore denies the same.

15.    Dartmouth Health admits that Dr. Barsky was involved in the activities described in Paragraph 15, but denies the characterizations thereof.

16.    Dartmouth Health admits that Dr. Barsky received a bonus at the maximum salary percentage during her last two years of employment based on several metrics. Answering further, all executives receive the same percentage of incentive payment if certain gateways and metrics are achieved. Dartmouth Health denies the remaining allegations in Paragraph 16.

**Supply Chain Concerns**

17.    On or about January 17, 2025, Dartmouth Health's Board of Trustees determined that an internal review of its Supply Chain function with respect to the provenance of certain products was necessary.  Dr. Conroy requested Dr. Barsky to conduct the internal review. Dartmouth Health denies the remaining allegations in Paragraph 17.

18.    Dartmouth Health is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 18, and therefore denies the same.

19.    Dartmouth Health admits that an investigation of the Supply Chain function was initiated in 2024. Answering further, any further responses are protected by the attorney-client privilege and work product doctrine.

20.    Responding to the allegations in Paragraph 20 would require Dartmouth Health to disclose information protected by the attorney-client privilege and work product doctrine. Answering further, the term "gray market" is an ambiguous term, and Dartmouth Health is consequently unable to form a belief about the truth of this allegation, and therefore denies the allegations in Paragraph 20.

21.    The term "gray market" is an ambiguous term. Dartmouth Health is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 21, and therefore denies the same.

22.    Dartmouth Health is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 22, and therefore denies the same.

23.    Dartmouth Health admits that in the spring of 2024, Dartmouth Health's Community Group Practices gave a presentation to supply chain leadership about defects they had experienced in certain products. The terms "medical examination gloves" and "surgical drapes" are undefined and Dartmouth Health therefore denies those characterizations.  Dartmouth Health denies the remaining allegations in Paragraph 23.

24.    Dartmouth Health is without knowledge or information sufficient to determine when "pandemic shortages had decreased" and is consequently unable to form a belief about the truth of this allegation, and therefore denies the allegations in Paragraph 24.

25.    Dartmouth Health admits that it has entered into exclusive and fixed-quantity contracts. Dartmouth Health is without knowledge or information sufficient to form a belief about

the truth of the remaining allegations in Paragraph 25, and therefore denies the same.

26.    Dartmouth Health admits its internal practice is to inquire about conflicts of interest. Dartmouth Health is without knowledge or information sufficient to form a belief as to the remaining allegations and therefore denies the same.

27.    Dartmouth Health admits that, during the tenure of the former VP of Supply Chain, Dartmouth Health utilized consultants to purportedly advise on various supply chain functions, including contracting, procurement, and other matters. Dartmouth Health denies the consultants were employees. Answering further, to the extent that the allegations in Paragraph 27 relate to potential conflicts of interest by consultants, Dartmouth Health has learned that a few consultants held financial interests in vendors that had been awarded contracts. Dartmouth Health denies the remaining allegations in Paragraph 27.

28.    Responding to the allegations in Paragraph 28 would require Dartmouth Health to disclose information protected by the attorney-client privilege and work product doctrine.

29.    Responding to the allegations in Paragraph 29 would require Dartmouth Health to disclose information protected by the attorney-client privilege and work product doctrine.

30.    Responding to the allegations in Paragraph 30 would require Dartmouth Health to disclose information protected by the attorney-client privilege and work product doctrine.

31.    Responding to the allegations in Paragraph 31 would require Dartmouth Health to disclose information protected by the attorney-client privilege and work product doctrine.

32.    Responding to the allegations in Paragraph 32 would require Dartmouth Health to disclose information protected by the attorney-client privilege and work product doctrine.

33.    Responding to the allegations in Paragraph 33 would require Dartmouth Health to disclose information protected by the attorney-client privilege and work product doctrine. To the

extent a further response is required, Dartmouth Health denies the remaining allegations in Paragraph 33.

34.     Responding to the allegations in Paragraph 34 would require Dartmouth Health to disclose information protected by the attorney-client privilege and work product doctrine.

35.     It is admitted that Dr. Conroy instructed Dr. Barsky to conduct an internal review and develop an action plan. Dartmouth Health denies the remaining allegations in Paragraph 35.

36.     Responding to the allegations in Paragraph 36 would require Dartmouth Health to disclose information protected by the attorney-client privilege and work product doctrine.

37.     Dartmouth Health admits the allegations in Paragraph 37.

38.     Dartmouth Health is without knowledge or information sufficient to form a belief about the allegations in Paragraph 38, and therefore denies the same.

39.     Dartmouth Health is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 39, and therefore denies the same.

40.     Responding to the allegations in Paragraph 40 would require Dartmouth Health to disclose information protected by the attorney-client privilege and work product doctrine. Answering further, Dartmouth Health admits that Dr. Barsky and Vizient conducted internal reviews of the Supply Chain function at Dartmouth Health and found areas for improvement. To the extent a further response is required, Dartmouth Health denies the same.

41.     Responding to the allegations in Paragraph 41 would require Dartmouth Health to disclose information protected by the attorney-client privilege and work product doctrine.

42.     Paragraph 42 purports to characterize a Vizient report. The document speaks for itself, and Dartmouth Health denies any allegation inconsistent with the same.

43.     The allegations in Paragraph 43 are too vague to respond to as they do not identify

whose concerns the allegation is referencing. As a result, Dartmouth Health is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 43, and therefore denies the same.

44.     Paragraph 44 purports to characterize a Vizient report. The document speaks for itself, and Dartmouth Health denies any allegation inconsistent with the same.

45.     Responding to the allegations in Paragraph 45 would require Dartmouth Health to disclose information protected by the attorney-client privilege and work product doctrine. Answering further, Dartmouth Health is without knowledge or information sufficient to form a belief as to what Dr. Barsky identified, and therefore denies the allegations in Paragraph 45.

46.     Paragraph 46 contains legal conclusions to which no response is required. To the extent a response is required, Dartmouth Health denies the allegations in Paragraph 46.

47.     Paragraph 47 contains legal conclusions to which no response is required. To the extent a response is required, Dartmouth Health denies the allegations in Paragraph 47.

48.     Responding to the allegations in Paragraph 48 would require Dartmouth Health to disclose information protected by the attorney-client privilege and work product doctrine. Dartmouth Health is without knowledge or information sufficient to form a belief as to what Dr. Barsky identified, and therefore denies the allegations in Paragraph 48.

49.     Dartmouth Health denies the allegations in Paragraph 49.

50.     Dartmouth Health admits that Dr. Barsky presented the findings of her internal review to executive leadership and the Board. Dartmouth Health is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 50, and therefore denies the same.

51.     Dartmouth Health admits the allegations in Paragraph 51.

52.     Paragraph 52 contains legal conclusions to which no response is required.  To the extent a response is required, Dartmouth Health denies the allegations in Paragraph 52. Answering further, Paragraph 52 purports to quote from the Code of Federal Regulations. The Code of Federal Regulations speaks for itself, and Dartmouth Health denies any allegation inconsistent with the same.

53.     Responding to the allegations in Paragraph 53 would require Dartmouth Health to disclose information protected by the attorney-client privilege and work product doctrine.

54.     Dartmouth Health admits that Dr. Conroy and the COO suggested proposed edits to Dr. Barsky's presentation and talking points. Dartmouth Health denies the remaining allegations contained in Paragraph 54.

55.     Dartmouth Health denies the allegations in Paragraph 55.

56.     Dartmouth Health admits that Dr. Conroy changed the reporting structure so that Dr. Barsky reported to the COO. Dartmouth Health further admits that Dr. Conroy and the former COO previously worked together at Lahey Health system in Massachusetts, that they had a personal friendship, and that Dr. Conroy recruited him to join Dartmouth Health. Dartmouth Health denies that the Board asked Dr. Barsky to conduct an investigation; rather, Dr. Conroy asked Dr. Barsky to conduct an internal review. In early 2025, Dr. Conroy revised the reporting structure so that Dr. Barsky would report directly to her. Dartmouth Health is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 56, and therefore denies the same.

57.     Dartmouth Health is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 57, and therefore denies the same.

58.     Dartmouth Health denies the allegations in Paragraph 58. Answering further, each

component of the Dartmouth Health system was given the opportunity to continue using the gloves or obtain replacement gloves from a different manufacturer. Dartmouth Health denies the remaining allegations in Paragraph 58.

59.     Dartmouth Health denies the allegations in Paragraph 59.

60.     Dartmouth Health denies the allegations in Paragraph 60. Answering further, Dartmouth Health states that Dr. Conroy and Dr. Barsky agreed on a plan to address the concerns with the gloves. When Dr. Conroy subsequently learned that Dr. Barsky had attempted to implement a different plan without obtaining Dr. Conroy's approval, she called Dr. Barsky to reprimand her for not following the agreed-upon plan.

61.     Dartmouth Health is without information or knowledge sufficient to form a belief about the truth of the allegations in Paragraph 61, and therefore denies the same.

62.     Responding to the allegations in Paragraph 62 would require Dartmouth Health to disclose information protected by the attorney-client privilege and work product doctrine.

63.     Dartmouth Health admits that Dr. Conroy agreed to have the gloves tested by ECRI. Dartmouth Health denies the characterization of this arrangement.  By further answer, Dr. Conroy herself recommended that the gloves should be tested by ECRI. Dartmouth Health is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 63, and therefore denies the same.

64.     Paragraph 64 contains legal conclusions to which no response is required.  To the extent a response is required, Dartmouth Health denies the allegations in Paragraph 64. Answering further, Paragraph 64 purports to quote from the Code of Federal Regulations, specifically, 29 C.F.R. § 1910.138(b). The Code of Federal Regulations speaks for itself, and Dartmouth Health denies any allegation inconsistent with the same.

65.     Paragraph 65 contains legal conclusions to which no response is required. Answering further, Dartmouth Health admits that ECRI determined that the gloves were compliant and made recommendations for future use. Dartmouth Health denies the remaining allegations contained in Paragraph 65.

66.     Dartmouth Health admits the allegations in Paragraph 66. Answering further, Dr. Conroy asked Dr. Barsky to present to the Board.

67.     Dartmouth Health denies the allegations in Paragraph 67.

68.     Dartmouth Health denies the allegations in Paragraph 68.

69.     Dartmouth Health denies the allegations in Paragraph 69.

70.     Dartmouth Health is without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 70, and therefore denies the same.

71.     Dartmouth Health admits that the COO resigned in June 2025.  Responding to the remaining allegations in Paragraph 71 would require Dartmouth Health to violate its confidentiality obligations.

72.     Dartmouth Health admits the allegations in Paragraph 72.

73.     Dartmouth Health admits the allegations in Paragraph 73.

74.     Dartmouth Health admits the allegations in Paragraph 74.

75.     Dartmouth Health admits that it did not install software provided by ECRI, but denies that it was required to install such software. Answering further, Dartmouth Health is without knowledge or information sufficient to form a belief about the truth of the allegation that the software would have identified safety concerns about healthcare products used at other US hospitals, and therefore denies the same.

76.     Dartmouth Health is without information or knowledge sufficient to form a belief

about the truth of the allegations in Paragraph 76, and therefore denies the same.

77.    Dartmouth Health admits that Dartmouth Health terminated Dr. Barsky's employment. Dartmouth Health is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 77, and therefore denies the same.

### Exclusion and Retaliation

78.    Dartmouth Health denies the allegations in Paragraph 78.

79.    Dartmouth Health denies the allegations in Paragraph 79.

80.    Dartmouth Health denies the allegations in Paragraph 80.

81.    Dartmouth Health denies the allegations in Paragraph 81.

82.    Dartmouth Health responds that to the extent an email exists, it speaks for itself. Dartmouth Health denies any allegations inconsistent with the same.

83.    Dartmouth Health denies the allegations in Paragraph 83.

84.    Dartmouth Health states that Dr. Barsky's name was suggested as a possible board member but ultimately the open position went to another candidate. Dartmouth Health denies the remaining allegations in Paragraph 84.

85.    Dartmouth Health admits the allegations in Paragraph 85. Answering further, Dr. Conroy informed Dr. Barsky at the outset that the transfer of the value analysis team to her may be temporary and that the team could be transferred back to Supply Chain in the future.

86.    Dartmouth Health denies the allegations in Paragraph 86.

87.    Dartmouth Health admits that Dr. Conroy changed the reporting structure of Dr. Calderwood without notifying Dr. Barsky, who was not Dr. Calderwood's solid line manager. Dartmouth Health denies the remaining allegations in Paragraph 87.

### Toxic Leadership, Unequal Treatment, and Pretextual Termination

11

88.    Dartmouth Health admits that in a meeting on January 20, 2026 that was also attended by Dartmouth Health's Chief Human Resources Officer, Aimee Claiborne, Dr. Conroy informed Dr. Barsky that her employment was being terminated. Dartmouth Health denies the remaining allegations in Paragraph 88.

89.    Dartmouth Health denies that the January 8, 2026 incident was merely a "comment." Answering further, the January 8, 2026 incident was consistent with a pattern of unacceptable and insubordinate conduct by Dr. Barsky.

90.    Dartmouth Health denies the allegations in Paragraph 90.

91.    Dartmouth Health admits that Dr. Barsky had a conversation with Dr. Calderwood after the meeting. Dartmouth Health is without information or knowledge sufficient to form a belief about the truth of the remaining allegations in Paragraph 91, and therefore denies the same.

92.    Dartmouth Health admits that Dr. Calderwood met with his supervisor and another meeting participant after the meeting. The term "with similar concerns" is vague and ambiguous. Dartmouth Health is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 92, and therefore denies the same.

93.    Paragraph 93 purports to quote a written notice. The document speaks for itself, and Dartmouth Health denies any allegations inconsistent with the same. Dartmouth Health denies the remaining allegations in Paragraph 93.

94.    Dartmouth Health denies the allegations in Paragraph 94.

95.    Dartmouth Health denies the allegations in Paragraph 95.

96.    Paragraph 96 purports to characterize the 2021 Letter of Agreement. The document speaks for itself, and Dartmouth Health denies any allegation inconsistent with the same. Answering further, Dartmouth Health did not immediately issue a written cause notice because the

parties were trying to work out an amicable resolution.

97.    Paragraph 97 purports to quote a written notice. The document speaks for itself, and Dartmouth Health denies any allegation inconsistent with the same. The remaining allegations of Paragraph 97 are denied.

98.    Dartmouth Health is without information or knowledge sufficient to form a belief about the truth of the allegations in Paragraph 98, and therefore denies the same.

99.    Dartmouth Health is without information or knowledge sufficient to form a belief about the truth of the allegations in Paragraph 99, and therefore denies the same.

100.    Dartmouth Health is without information or knowledge sufficient to form a belief about the truth of the allegation in Paragraph 100, and therefore denies the same.

101.    Dartmouth Health denies the allegations in Paragraph 101.

102.    Dartmouth Health denies the allegations in Paragraph 102.

103.    Dartmouth Health responds as follows:

a.    Dartmouth Health denies the allegations in Paragraph 103(a). By further answer, Dartmouth Health admits that the Chief Clinical Officer asked Dr. Barsky about an award she claimed to have received after several colleagues in the Emergency Department brought the issue to his attention.

b.    Dartmouth Health denies the allegations Paragraph 103(b).

c.    Dartmouth Health denies the allegations in Paragraph 103(c).

104.    Dartmouth Health admits the allegations in Paragraph 104.

105.    Dartmouth Health admits the allegations in Paragraph 105.

106.    Dartmouth Health admits that Dr. Barsky served in a mentor role to other individuals associated with Dartmouth Health. Dartmouth Health is without information or

13

knowledge sufficient to form a belief as to the truth of the remaining allegations, and therefore denies the same.

107.    Dartmouth Health denies the allegations in Paragraph 107.

## Count I

## Wrongful Termination in Violation of Public Policy

108.    Dartmouth Health repeats its responses to each and every allegation contained in Paragraphs 1 through 107 of the Complaint as if fully set forth herein.

109.    Paragraph 109 contains legal conclusions to which no response is required. To the extent a response is required, Dartmouth Health denies the allegations in Paragraph 109.

110.    Paragraph 110 contains legal conclusions to which no response is required. To the extent a response is required, Dartmouth Health denies the allegations in Paragraph 110.

111.    Paragraph 111 contains legal conclusions to which no response is required. To the extent a response is required, Dartmouth Health denies the allegations in Paragraph 111.

112.    Dartmouth Health is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 112, and therefore denies the same.

113.    Dartmouth Health admits that it terminated Dr. Barsky's employment. Dartmouth Health denies the remaining allegations in Paragraph 113.

114.    Dartmouth Health admits that Dr. Barsky was a mentor to various other employees. Dartmouth Health denies the remaining allegations in Paragraph 114.

115.    Dartmouth Health denies the allegations in Paragraph 115.

116.    Paragraph 116 contains legal conclusions to which no response is required. To the extent a response is required, Dartmouth Health denies the allegations in Paragraph 116.

117.    Paragraph 117 contains legal conclusions to which no response is required. To the

14

extent a response is required, Dartmouth Health denies the allegations in Paragraph 117.

## Count II

### New Hampshire Whistleblower Protection Act, RSA 275-E:2

118. Dartmouth Health repeats its responses to each and every allegation contained in Paragraphs 1 through 117 of the Complaint as if fully set forth herein.

119. Paragraph 119 contains legal conclusions to which no response is required. To the extent a response is required, Dartmouth Health denies the allegations in Paragraph 119.

120. Paragraph 120 contains legal conclusions to which no response is required. To the extent a response is required, Dartmouth Health denies the allegations in Paragraph 120.

121. Dartmouth Health is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 121, and therefore denies the same.

122. Paragraph 122 contains legal conclusions to which no response is required. To the extent a response is required, Dartmouth Health denies the allegations in Paragraph 122.

123. Paragraph 123 contains legal conclusions to which no response is required. To the extent a response is required, Dartmouth Health denies the allegations in Paragraph 123.

## Count III

### Violation of the Anti-Retaliation Provisions of the

### Federal False Claims Act, 31 U.S.C. § 3730(h)

124. Dartmouth Health repeats its responses to each and every allegation contained in Paragraphs 1 through 123 of the Complaint as if fully set forth herein.

125. Paragraph 125 contains legal conclusions to which no response is required. To the extent a response is required, Dartmouth Health denies the allegations in Paragraph 125.

126. Paragraph 126 contains legal conclusions to which no response is required. To the

extent a response is required, Dartmouth Health denies the allegations in Paragraph 126.

127.    Paragraph 127 contains legal conclusions to which no response is required. To the extent a response is required, Dartmouth Health denies the allegations in Paragraph 127.

128.    Paragraph 128 contains legal conclusions to which no response is required. To the extent a response is required, Dartmouth Health denies the allegations in Paragraph 128.

129.    Paragraph 129 contains legal conclusions to which no response is required. To the extent a response is required, Dartmouth Health denies the allegations in Paragraph 129.

130.    Paragraph 130 contains legal conclusions to which no response is required. To the extent a response is required, Dartmouth Health denies the allegations in Paragraph 130.

131.    Paragraph 131 contains legal conclusions to which no response is required. To the extent a response is required, Dartmouth Health denies the allegations in Paragraph 131.

### Affirmative Defenses

Pursuant to Fed. R. Civ. P. 8(c), Dartmouth Health, by its attorneys, hereby sets forth the following affirmative defenses and reserves the right to raise additional affirmative defenses based on information learned through discovery.

1.    Plaintiff fails to state claims upon which relief can be granted.

2.    Plaintiff's claims are barred, in whole or in part, due to her failure to exhaust administrative remedies.

3.    At all relevant times, Defendants acted reasonably and in good faith.

4.    Plaintiff cannot establish that her termination was for a reason that conflicts with a clear and well-defined public policy sufficient to overcome the at-will employment doctrine.

5.    Plaintiff cannot establish that she engaged in protected activity.

16

6. Plaintiff cannot establish that she had reasonable cause to believe there was a violation of a New Hampshire law or rule.

7. Plaintiff cannot establish that she reported, or caused to be reported, what she claims to have reasonably believed was a violation of a New Hampshire rule or law.

8. Dartmouth Health had legitimate, non-discriminatory reasons for any adverse employment action towards Plaintiff.

9. Plaintiff cannot prove that Defendants' legitimate, non-discriminatory reasons for any adverse actions taken against Plaintiff were a pretext for taking such actions because of a protected act engaged in by Plaintiff.

10. Plaintiff cannot show any causal nexus between her alleged protected activity and any adverse employment action by Dartmouth Health.

11. Plaintiff's common law wrongful discharge claim is preempted by the New Hampshire Whistleblowers' Protection Act.

12. To the extent applicable, Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

13. To the extent applicable, Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, laches and/or estoppel.

14. To the extent applicable, Plaintiff's claims are barred in whole or in part, by the doctrine of unclean hands.

15. Plaintiff has failed to establish any basis for asserting claims for recovery of compensatory damages or attorneys' fees.

16. Plaintiff has failed to mitigate her damages.

17.    Plaintiff has failed to establish any basis for asserting claims for recovery of punitive damages.

18.    Plaintiff has failed to establish any basis for asserting claims for recovery of enhanced damages.

19.    Dartmouth Health hereby asserts all additional affirmative defenses that may be revealed in the course of discovery, by further investigation, or at trial.

Defendants reserve the right to amend this Answer to add such affirmative defenses and potential counterclaims as warranted by additional investigation and discovery in this case.

[SIGNATURES ON NEXT PAGE]

Respectfully submitted,

**DARTMOUTH-HITCHCOCK MEDICAL CENTER, DARTMOUTH-HITCHCOCK CLINIC, MARY HITCHCOCK MEMORIAL HOSPITAL, and DARTMOUTH-HITCHCOCK HEALTH,**

By their attorneys,


*/s/ Victoria Breese*
Victoria Breese, Esq.
New Hampshire Bar No. 277022
FOLEY & LARDNER LLP
111 Huntington Avenue, Suite 2500
Boston, MA 02199
Tel. (617) 226-3156
Fax (617) 342-4001
vbreese@foley.com

Donald Schroeder (*pro hac vice pending*)
Katharine Beattie (*pro hac vice pending*)
Jared Collins (*pro hac vice pending*)
FOLEY & LARDNER LLP
111 Huntington Avenue, Suite 2500
Boston, MA 02199
Tel. (617) 342-4041
Fax (617) 342-4001
dschroeder@foley.com
kbeattie@foley.com
jared.collins@foley.com

Dated: June 11, 2026

19

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 11, 2026, a copy of the foregoing document was electronically filed through the ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.

/s/ *Victoria Breese*
Victoria Breese, Esq.

20